**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES E. KILLIAN, as Independent Administrator of the Estate of SUSAN M. KILLIAN, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 C 4755 |
| CONCERT HEALTH PLAN, CONCERT HEALTH PLAN INSURANCE COMPANY, ROYAL MANAGEMENT CORPORATION HEALTH INSURANCE PLAN, and ROYAL MANAGEMENT CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

On March 2, 2009, Plaintiff James E. Killian ("Killian") filed his four-count Second

Amended Complaint ("Amended Complaint") against Defendants Concert Health Plan ("CHP"),

Concert Health Plan Insurance Company ("CHPIC"), Royal Management Corporation Health

Insurance Plan ("Royal Plan") and Royal Management Corporation ("Royal Management")

(collectively, "Defendants").  Killian filed suit under the Employee Retirement Income Security

Act ("ERISA") after Susan's[1] insurance provider failed to cover certain medical expenses

incurred prior to her death in August 2006.  Presently before us are several pending motions,

including: (1) CHP's motion to dismiss, based on the grounds that Killian sued the wrong entity

---

[1] To avoid any confusion, we shall refer to Killian's wife, Susan M. Killian, by her first
name.

(Dkt. No. 138 ("CHP MTD")); (2) a motion for summary judgment filed by CHP and later adopted by CHPIC (Dkt. No. 81 ("MSJ")); and (3) Royal Management's motion to dismiss Count III (Dkt. No. 166).  For the reasons discussed below, we: (1) convert CHP's motion to dismiss to a Rule 56 motion and order further briefing; (2) grant in part, and deny in part, CHPIC's motion for summary judgment; and (3) grant in part, and deny in part, Royal Management's motion to dismiss.  We also request full briefing on two pending motions for sanctions (Dkt. Nos. 200, 203) and deny as moot Killian's pending motion to strike the answer filed by the Royal Plan (Dkt. No. 171).

## I.    CHP's MOTION TO DISMISS[2]

In its motion to dismiss, CHP argues that Killian mistakenly included it as a defendant in his Amended Complaint.  (CHP MTD at 1-3.)  CHP contends that it is not a real party in interest but, rather, "is a non-for-profit corporation whose purpose is to provide plan administration for health insurance plans issued by [CHPIC] to companies with 50 or fewer employees."  (*Id.* at 1, 3.)  In support of its motion, CHP attached an affidavit from Johny Antony, CHPIC's Vice President of Operations.  (*Id.*, Ex. B.)  In that affidavit, Antony attempts to clarify that CHP did not issue a health insurance policy to Royal Management, but that CHPIC provided "health insurance coverage through a plan presented by Royal Management."  (*Id.*, Ex. B. ¶¶ 3-4.)  Thus, according to CHP, Killian intended to sue CHPIC but erroneously included CHP in his Amended Complaint as well.  (*Id.* at 3.)  CHP also notes that defendant Royal Plan admitted, in its answer,

_____

[2] As the parties are no doubt aware given this case's procedural history, we must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff, when considering a motion to dismiss.  *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)).

that it is the plan in which Susan participated, not CHP.  (CHP MTD Reply at 1.)

Killian, however, responds that he "did intend to sue an ERISA plan known as Concert Health Plan" and included CHP as a party because the precise legal name of that plan remains uncertain.  (Resp. to CHP MTD at 2-3.)  He concedes that he is not seeking relief from the "Concert Health Plan, the non-profit Illinois corporation."  (*Id.* at 3.)

We are befuddled by the parties' inability to work out this essential identity issue, which has plagued this case since its inception.  Basic discovery and full, frank disclosure by both parties should have resolved this question years ago.  Instead, Killian and CHP (who was originally the only defendant) continue to point fingers at each other.  While CHP and CHPIC argue with conviction that Killian knowingly has no basis for an action against CHP, Killian convincingly describes CHP's many inconsistent and/or undefined references to "Concert Health Plan" or the "Plan" in documents and throughout these proceedings, which may have created confusion as to the real parties in interest.

While we would like to bring this vexing issue to a close, we cannot do so today.  As Killian correctly states – *and as we previously instructed CHP* – we cannot consider material outside the complaint when deciding a Rule 12(b)(6)[3] motion to dismiss.  *Killian v. CHP*, No. 07 C 4755, 2008 WL 2561218, at *2 n.2 (N.D. Ill. June 24, 2008); *see* Fed. R. Civ. P. 12(d).  "If, on a motion under Rule 12(b)(6) or 12©, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Both parties argue facts with respect to this issue, and CHP attached

---

[3] Although CHP did not so state, we conclude that it brings this motion pursuant to either Rule 12(b)(6) or 12©.

evidentiary material in the form of Antony's affidavit. (CHP MTD at 1-3 & Ex. B; Resp. to CHP MTD at 2-4; CHP MTD Reply at 2-3.) Rather than simply deny the motion, we convert it *sua sponte* to a Rule 56 motion and order additional, limited briefing on this point. Fed. R. Civ. P. 12(d). We expect the parties to provide a succinct, straightforward explanation – with supporting evidence – of whether CHP belongs in this litigation, and if so, in what capacity. Killian may file any material pertinent to this question, if he chooses, by September 10, 2009. CHP may then reply, if necessary, by September 17, 2009.

## II.     MOTION FOR SUMMARY JUDGMENT

We turn next to CHPIC's motion for summary judgment.[4] Killian generally alleges that CHP made an adverse benefit determination when denying certain benefits claims for Susan's medical care and that, moreover, it failed to comply with regulations governing notification of such determinations. (Am. Compl. at 1-4, 9-13.)[5] CHPIC contends that it properly paid all claims pursuant to Susan's plan of coverage and substantially complied with all notification and plan documentation requirements. It also argues that, even if it committed the alleged violations, Killian is not entitled to the remedies he seeks. (MSJ Mem. at 8-13; MSJ Reply at 2-5, 6-12, 14-18.)

---

[4] CHPIC adopted this motion, but we shall refer to both CHP and CHPIC as appropriate throughout this discussion. (*See* 3/20/09 Order, Dkt. No. 147 (permitting CHPIC to adopt all pleadings filed by CHP as its own).) Although CHP contends that it is not a proper party, the Amended Complaint presently asserts claims against it, which are relevant to the summary judgment motion.

[5] Because Killian renumbered the paragraphs for each count of his Amended Complaint, we cite page numbers, rather than paragraph numbers, for relevant allegations.

## A.    *Summary of Facts*[6]

Killian is the administrator for the estate of his wife, Susan, who prior to her death was a

Royal Management employee.  (Def.'s Facts ¶ 1; Pl.'s SOF ¶¶ 1, 16.)  CHPIC entered into an

agreement with Royal Management to provide health insurance coverage to its employees,

effective July 1, 2005.  (Def.'s Facts ¶ 2.)  Susan enrolled in a medical insurance plan offered by

Royal Management, referred to as the "SO35" plan.  (*Id.* ¶¶ 2, 8, 12.)  Killian was not present

when, and does not know why, Susan elected that particular plan.  (*Id.* ¶ 12.)  Susan received

copies of a CHPIC Certificate of Insurance and the Royal Management Employee Benefit

Summary.  (*Id.* ¶¶ 8, 14, 25; Def.'s Exs. H1, H6.)

In February 2006, Susan visited a doctor after suffering from a cold and persistent

headaches.  (Pl.'s Facts ¶ 3.)  A CAT scan revealed three tumors in her brain, and Susan was

eventually diagnosed with metastasized lung cancer.  (*Id.* ¶¶ 4-5.)  Susan's doctor sent her to

Delnor Community Hospital for further diagnosis.  (*Id.* ¶ 6.)  After the doctors at Delnor

---

[6] Unless otherwise noted, the facts described herein are undisputed and culled from the
parties' Local Rule 56.1 statements of fact.  We have not considered, however, CHPIC's
"Additional Statement of Facts" included with its Rule 56.1(b)(3) response to Killian's
statements of fact.  (Def.'s Resp. to Pl.'s SOF ¶¶ 34-68.)  The Local Rules do not allow a movant
on summary judgment to serve such additional statements as a reply, particularly because the
non-movant has no opportunity to respond to them.  Although the non-movant may submit
"additional facts that *require the denial of summary judgment*," the rules do not permit the
moving party a similar opportunity.  L.R. 56.1(b)(3)© (emphasis added).  *See Premier Capital
Mgmt., LLC v. Cohen*, No. 02 C 5368, 2008 WL 4378313, at *2 n.4 (N.D. Ill. Mar. 24, 2008)
(commenting that a movant cannot "make successive filings . . . to which the non-movant has no
opportunity to respond").

We also ignore numerous factual allegations included in Killian's response to the motion
for summary judgment.  Killian's brief includes several references to documents not submitted
as exhibits and we need not consider such unsupported argument.  (*See, e.g.*, Resp. to MSJ at 8-
9, 16, 22 (referring to certain emails and letters).)

informed Susan that they could not operate on her brain tumors, she desired a second opinion.

(*Id.* ¶ 8.)  The Killians then contacted Drs. Barnes and Bonami at Rush University hospital.  (*Id.* ¶ 9.)

Upon arriving at Rush for Susan's appointment with Dr. Bonami, Killian called an 800 number on the back of Susan's insurance card and told an unknown representative that they were getting a second opinion.  (*Id.* ¶ 10.)  The representative then asked where the Killians were, and Killian informed her that they were at St. Luke's.  (*Id.*)  Although the representative could not locate a listing for St. Luke's, she told Killian to proceed with whatever had to be done.  (*Id.*)  He called another number on Susan's insurance card later that same day and spoke with a representative named Maria.  (*Id.* ¶ 11.)  Maria told Killian that he was at Rush, not St. Luke's, but never said that Rush was out of the network or that Susan would have only limited benefits or coverage for treatment there.  (*Id.*)  Neither representative mentioned the PHCS network, the SELECT network, or maximum allowable amounts or fees.  (*Id.*)

Dr. Barnes informed Susan that one of her tumors should be removed immediately and she underwent surgery shortly thereafter.  (*Id.* ¶¶ 9, 12.)  Susan saw Dr. Barnes one or two more times as an outpatient.  (*Id.* ¶ 13.)  Several months later, in June 2006, Dr. Bonami instructed Susan to go to Rush's emergency room because of her coughing.  (*Id.* ¶ 14.)  She was then admitted to Rush for nine days.  (*Id.* ¶ 15.)  After her discharge, she was unable to tolerate chemotherapy and subsequently died in August 2006.  (*Id.* ¶¶ 15-16.)

On July 31, 2006, Killian wrote the claims department, requesting an immediate review of several unpaid claims.  (Def.'s Facts ¶ 28; *see* Def.'s Ex. L.)  In his letter, Killian stated that the disputed "invoices were refused and the reasons given were over maximum allowable or out

of network coverage." (Def.'s Ex. L.) CHP's appeals department responded on September 19
and 20, 2006, informing Killian that no additional benefits were payable under Susan's plan
because the services at issue were delivered by an out-of-network provider.[7] (Def.'s Facts ¶ 29;
Def.'s Exs. H2-H3.) That letter explained that because Rush did not fall within the PHCS (Open
Access) network, claims from Rush were processed at the out-of-network level, which were
subject to a maximum allowable fee. (Def.'s Exs. H2-H3.) On October 25, 2006, CHP's
Appeals Committee again informed Killian that no additional benefits were payable. (Def.'s
Facts ¶ 30; Def.'s Ex. H4.) That letter stated that some of the claims (apparently emergency
services) were processed at the in-network level. (Def.'s Ex. H4.) Nonetheless, CHP indicated
that the maximum allowable fee would still apply for those certain claims being processed in-
network. (*Id.* ("Your claims were processed using the maximum allowable fee and processed at
the in-network level.").) CHP noted that because "medical providers are not required to write-
off the over maximum allowed amounts . . . [they] are the responsibility of the member." (*Id.*)
Several of Susan's health care providers continue to bill Killian for services not covered by her
health plan. (Pl.'s Facts ¶ 17.) Accordingly, Killian filed suit, seeking, *inter alia*, judgment for
the amount of unpaid medical bills, totaling approximately $80,000.

**B.**     ***Standard of Review***

Summary judgment is proper only when "there is no genuine issue as to any material fact
and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56©. A
genuine issue for trial exists when "the evidence is such that a reasonable jury could return a

---

[7] The notices at issue were sent on letterhead reading only "Concert Health Plan."
(Def.'s Exs. H2-H4.) Accordingly, we shall keep references to "CHP" when describing these
letters despite CHPIC's adoption of this motion.

verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted).  Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e).  In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor.  *See Anderson*, 477 U.S. at 255.

## C.    *Analysis*

### 1..    CHPIC's Alleged Failure to Comply with the Terms of the Plan Documents in Denying Benefits Claimed by Killian

In its motion, CHPIC insists that all of Susan's medical claims were paid in compliance with the terms of the relevant plan documents, sometimes referred to as the "Plan" (Reply at 1-2), the "Plan language" or "Plan documents" (MSJ Mem. at 8-9), or the "certificate and plan documents"[8] (*id.* at 8).  (*See id.* at 8-9, 11; MSJ Reply at 2-5.)  CHPIC relies extensively on the language of the Certificate of Insurance ("COI") in describing Susan's coverage and as support for its arguments.  (*See* Def.'s Ex. H1.)  In addition to his substantive arguments, Killian states

---

[8] Throughout CHPIC's references to documentation, "plan" is not defined.  Relatedly, references to "plan" documentation should not be confused with references to a "plan" entity, ie. CHP and/or Royal Plan.

that none of the defendants have provided him with a complete, executed copy of the relevant group policy. (Resp. to MSJ at 6-8.) In light of CHPIC's failure to provide all of the plan documents, we cannot resolve this benefits question at this time.

As argued by CHPIC, the fifty-one page COI includes all provisions relevant to this action. Nonetheless, the first paragraph of the COI is a disclaimer, which reads:

> This certificate is not an insurance policy. It is an outline of the insurance provided by the group policy and it does not extend or change the coverage afforded by such group policy. The insurance described by this certificate is subject to all the provisions, terms, exclusions and conditions of the group policy.

(Def.'s Ex. H1 at 1.) Accordingly, the COI requires us to consult the group policy to confirm Susan's insurance "provisions, terms, exclusions and conditions." (*Id.*) As Killian points out, however, CHPIC has not submitted a complete, executed copy of the group policy for our review. In opposition to the motion for summary judgment, Killian provided a copy of the Master Group Policy ("Policy") in his possession – but it lacks certain information and several exhibits. (Pl.'s Ex. 5.) The Policy indicates that the entire contract includes "this policy, the attached policyholder and *Employer* applications, the attached [COI], any attached riders or information sheets and the schedule of premiums." (*Id.* at CHP 0007.) The COI, applications and schedule of premiums are not attached, and we cannot confirm that they are identical to the documents provided by CHPIC. For example, is the COI relied upon by CHP the same document that should have been attached to this Policy? Are there any undisclosed riders with superseding terms?

Without the ability to confirm that we have all the governing documents, we cannot evaluate Killian's benefits claim. Indeed, without assuring ourselves that we have the pertinent

materials, we cannot even determine the appropriate standard of review for Killian's benefits claim.[9] *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989) (holding that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); *Deel\ v. Ameritech Long Term Disability Plan*, 545 F. Supp. 2d 758, 764 (N.D. Ill. 2008). Because the record before us does not include all the necessary evidence, we deny CHPIC's motion with respect to Killian's § 1132(a)(1)(B) claim for benefits.

### 2. CHPIC's Alleged Failure to Provide A Summary Plan Description

In his opposition brief (Resp. to MSJ at 14-16) and in the Amended Complaint (Am. Compl. at 7),[10] Killian contends that Susan did not receive a summary plan description ("SPD"), as mandated by ERISA. 29 U.S.C. §§ 1022, 1024(b); *see also id.* § 1132(c)(1) (providing ERISA's enforcement mechanism for violations of § 1024). In the Amended Complaint, however, Killian changed his position to allege that Royal Management, as plan administrator – and not CHPIC – "was obligated under ERISA . . . to furnish each participant of the plan a copy of the [SPD]." (Am. Compl. at 7, ¶ 12.) Indeed, as numerous courts have held, only the plan administrator bears responsibility for providing statutorily-required information, including SPDs, to plan participants. *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794-95 (7th Cir. 2009);

---

[9] The parties seemingly appreciate the significance of this threshold issue, as each argues for the ERISA standard of review that favors their position. (Resp. to MSJ at 10-12; MSJ Reply at 15-16.)

[10] We granted Killian leave to file the Amended Complaint after the primary briefing on this summary judgment motion was complete. We then ordered the parties to submit supplemental briefs on the motion. (2/27/09 Order, Dkt. No. 133.)

*Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1149 (7th Cir. 1998); *Klosterman v. W. Gen'l Mgmt., Inc.*, 32 F.3d 1119, 1122 (7th Cir. 1994); *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1031-33 (N.D. Ill. 2007); *Clark v. Hewitt Assocs. LLC*, 294 F. Supp. 2d 946, 951 (N.D. Ill. 2003). Because neither CHP (an alleged insurance plan), nor CHPIC (the alleged claims review fiduciary) are the plan administrator, they cannot be liable under § 1132(c)(1). *Mondry*, 557 F.3d at 794 (concluding that "CIGNA's role as the claims administrator did not bring it within the reach of sections 1024(b)(4) and 1132(c)(1)"); *Jacobs*, 520 F. Supp. 2d at 1031-1033 (holding that the ERISA plan itself could not be held liable under § 1132(c)(1) for failure to provide an SPD). (*See* Am. Compl. at 2-3.) Accordingly, to the extent that Killian intended the Amended Complaint to include a claim against CHP and CHPIC under § 1132(c)(1) for failure to provide an SPD or similar documents, such a claim cannot stand.

### 3. CHPIC's Alleged Failure to Comply with Notification Requirements

Although Killian does not cite to a particular statutory provision in the Amended Complaint, he alleges that CHP and CHPIC "failed to comply with [ERISA's] regulations regarding notification of benefit determinations." (Am. Compl. at 2-4.) ERISA § 1133, the basis for this claim, requires every employee benefit plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."[11] 29 U.S.C. § 1133(1); 29 U.S.C. § 1132(a)(1)(B) (statutory enforcement provision

---

[11] ERISA § 1133(2) also provides that benefit plans must offer a "reasonable opportunity" for "full and fair review" to participants whose claims are denied. Neither party contends that Killian asserts such a claim. The Amended Complaint focuses on CHP's alleged

for § 1133 violations); *see also* 29 C.F.R. § 2560.503-1(g), (j) (describing the manner and content required for benefit determination notifications). CHP contends that its letters,[12] dated September 19 and 20, 2006, and October 25, 2006, substantially complied with ERISA and its regulations, by explaining that "because [Susan] went to an out-of-network provider, the payments were subject to the maximum allowable amount" as provided by the plan language.[13] (MSJ Mem. at 11.) Regardless, we decline to evaluate the legal sufficiency of the denial letters at this time.

As discussed earlier, we do not have all of the pertinent plan documents on the record before us and thus, cannot determine which ERISA standard of review (*de novo* or arbitrary and

---

failure to comply with notification requirements, rather than any claim related to the review process itself.

[12] The parties have not described Killian's use of the review process in any detail. In fact, the letters disputed by the parties are notification letters issued after Killian's July 2006 appeal to a review committee. (Def.'s Facts ¶ 28; Def.'s Exs. H2-4, L.) Neither party has addressed the initial benefits decisions and notifications. Moreover, the Amended Complaint does not include any specific allegation concerning the initial benefits determinations, and Killian did not add any such argument in supplemental briefing on the motion for summary judgment. Accordingly, Killian's claim as to proper notification is limited to these three letters from the appeals committee.

[13] CHPIC's repeated assertion that it did not render an adverse benefit determination because there was no "denial" of Killian's claims is not well-taken. (MSJ Mem. at 8-9, 11-12, 14; MSJ Reply at 5, 15-16.) Of course the claims at issue were denied: Killian submitted the claims and they were rejected. (Def.'s Exs. H2-4.) CHPIC may contend that these determinations were not improper under the terms of the relevant plan documents, precluding liability, but they are "denials" nonetheless. CHPIC's citation to *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174 (7th Cir. 1994), in support of this argument is disingenuous. (MSJ Mem. at 12.) The *Tolle* court stated that only a denial of benefits triggers § 1133's notification requirements but concluded that the defendant plan had no such obligation there *because the plaintiff had not properly submitted a claim in the first instance.* 23 F.3d at 180. CHPIC has not argued that Killian failed to submit claims for Susan's benefits and thus, *Tolle* is irrelevant.

capricious) would apply to Killian's claims and whether he will prevail. Resolution of these questions is essential for our analysis of potential remedies for § 1133 violations. "Normally, in an action for an inadequate denial letter, the remedy is to remand the case to the administrator for a full and fair hearing of the claim." *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998); *see Schneider v. Sentry Group Long Term Disability Plan*, 422 F.3d 621, 629-30 (7th Cir. 2005) (explaining that, "in fashioning relief . . . under ERISA . . .we have focused on what is required in each case to fully remedy the defective procedures given the *status quo* prior to" the benefits decision) (internal quotation omitted); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 697 (7th Cir. 1992) (affirming district court's reinstatement of disability benefits in light of "significant procedural deficiencies"); *see also Williams v. Group Long Term Disability Ins.*, No. 05 C 4418, 2006 WL 2252550, at *9 (N.D. Ill. Aug. 2, 2006). Courts will not order remand, however, if "the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1997); *Schleibaum*, 153 F.3d at 503 ("No remand is necessary, of course, where it would be a useless formality."); *see also Cheng v. Unum Life Ins. Co.*, 291 F. Supp. 2d 717, 721 (N.D. Ill. 2003) (finding benefits denial to be arbitrary and capricious due to procedural deficiencies and remanding for further review, where a question of fact remained as to the plan's definition of disability). In addition, reinstatement of benefits is generally not needed to correct procedural errors when the court undertakes a *de novo* review of benefits entitlement, because the independent review accomplishes the statutory goal of "full and fair review." *See Walsh*, 601 F. Supp. 2d at 1044 ("Because the remedy for any procedural violations has already been granted when a court applies the *de novo* standard of review (*i.e.*, setting aside the plan administrator's

13

decision), this court can discern no reason to inquire further into [d]efendants' compliance with ERISA's procedural regulations in relation to [the claimant's] LTD claim."); *see also Vega v. Cherry Corp. Long Term Disability Benefits Plan*, No. 08 C 3516, 2009 WL 2178258, at *7 (N.D. Ill. July 21, 2009). Thus, even if we decided today that the letters violated § 1133, we could not determine whether Killian would be entitled to any relief and, if so, what type thereof. Accordingly, we deny CHPIC's motion for summary judgment as to this issue.

### 4.     CHPIC's Alleged Breach of Fiduciary Duty

In Count IV of the Amended Complaint, Killian asserts a claim for breach of fiduciary duty against CHPIC. (Am. Compl. at 12-13.) Killian alleges that CHPIC is liable as a co-fiduciary for all breaches committed by Royal Management, pursuant to 29 U.S.C. § 1105(a) and § 1132(a)(3).[14] (*Id.*) As a remedy, Killian asks that we order CHPIC to pay for all of Susan's unpaid medical bills or, in the alternative, compensatory damages in that amount, totaling approximately $80,000. (*Id.* at 13.) He also seeks, *inter alia*, an "order barring the enforcement of any plan provision which limits coverage for out-of-network providers and any other provision that was not adequately explained to participants and beneficiaries." (*Id.*)

In challenging Count IV, CHPIC argues that Killian cannot pursue a claim under § 1132(a)(3) as a matter of law.[15] Section 1132(a)(3) allows a participant or beneficiary to bring

---

[14] Although § 1132(a)(2) also authorizes actions against fiduciaries, it is not applicable in the present case. *See, e.g.*, *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S. Ct. 3085, 3091 (1985) (holding that § 1132(a)(2) authorizes litigation on behalf of, and to benefit only, the plan itself, rather than individual beneficiaries).

[15] Under the circumstances, CHPIC's challenge is more aptly considered as a motion to dismiss, and we shall treat it as such. Relatedly, Royal Management presents this same argument in its motion to dismiss. (RMC Mem. at 9-11; RMC Reply at 2-3.)

a civil action "to obtain other appropriate equitable relief" to redress ERISA violations. 29

U.S.C. § 1132(a)(3). Citing the Supreme Court's decision in *Varity Corporation v. Howe*, 516

U.S. 489, 512-16, 116 S. Ct. 1065, 1078-79 (1996), CHPIC contends that Killian cannot sue for

breach of fiduciary duty under § 1132(a)(3) – one of ERISA's "catchall" provisions – because

his § 1132(a)(1)(b) claim for benefits offers all potential remedies. (MSJ Supplement at 3-4.)

*See also Mondry*, 557 F.3d at 804-07. The court in *Varity* stated that "where Congress elsewhere

provided adequate relief for a beneficiary's injury, there will likely be no need for further

equitable relief, in which case such relief normally would not be 'appropriate.'" 516 U.S. at 515,

116 S. Ct. at 1079. Under *Varity*, courts generally find that § 1132(a)(3) permits claims for

traditional equitable relief only, to the extent that such relief is unavailable under

§ 1132(a)(1)(B). *Mondry*, 557 F.3d at 804-05 (agreeing with the majority of other circuits and

holding that a claim for reimbursement of therapy expenses was "a form of legal relief that

section 1132(a)(3) does not authorize"); *see also Erikson v. Ungaretti & Harris*, No. 03 C 5466,

2003 WL 22836462, at *2 (N.D. Ill. Nov. 24, 2003). Accordingly, the question here is whether

the relief sought by Killian under § 1132(a)(3) is adequate, and already available, via his

§ 1132(a)(1)(B) claim for benefits.

We conclude that Killian's request for injunctive relief is sufficiently distinct from his

claim for individual benefits under § 1132(a)(1)(B) as to permit a § 1132(a)(3) claim. *Varity*,

516 U.S. at 515, 116 S. Ct. at 1079; *Mondry*, 557 F.3d at 804-05; *see also Oplchenski v. Parfums

Givenchy, Inc.*, No. 05 C 6105, 2007 WL 495289, at *5 (N.D. Ill. Feb. 12, 2007); *Lee v.

Laborers' Local #231 Pension Plan Bd. of Trs.*, No. 04 C 1213, 2006 WL 1582457, at *10-11

(C.D. Ill. June 8, 2006). Killian explicitly seeks injunctive relief in the form of an "order barring

the enforcement of any plan provision which limits coverage for out-of-network providers and any other provision that was not adequately explained to participants and beneficiaries," thus requesting a broader equitable remedy that is not necessarily specific to his claim for benefits and, moreover, is unrelated to his demand for monetary relief. Neither CHPIC, nor Royal Management, has offered useful authority explaining why this proposed injunctive relief would be available under § 1132(a)(1)(B), which focuses on individual claims for benefits. (MSJ Supplement at 3-4; RMC Mem. at 9-11; RMC Reply at 2-3.) Ultimately, and contrary to Royal Management's contention (RMC Mem. at 10-11), the relief sought by Killian in Counts III and IV is not identical to that sought in Counts I and II. (*Compare* Am. Compl. at 2, 4 (including a request for either direct payment of Susan's bills by from defendants, or a judgment reimbursing Killian for those expenses, as well as a generic request for any "other legal or equitable relief" deemed appropriate) *with id.* at 11-13 (seeking the same monetary benefits but also requesting specific injunctive relief and statutory penalties).) Although we cannot predict whether Killian can prevail on his § 1132(a)(3) claims, we shall not dismiss them as a matter of law pursuant to *Varity*.

## III.    ROYAL MANAGEMENT'S MOTION TO DISMISS

We turn next to Royal Management's motion to dismiss Count III, in which Killian asserts a claim for breach of fiduciary duty and seeks statutory penalties under § 1132©. (Am. Compl. at 4-12.) Killian alleges that Royal Management was a fiduciary of the plan (either CHP or Royal Plan) and therefore obligated by ERISA, as plan sponsor and administrator, to provide certain information to participants and beneficiaries and to discharge its duties for their benefit. (*Id.* at 5-6, ¶¶ 4-10.) He states that although he submitted a written request for a copy of the

updated SPD for Susan's plan, Royal Management never provided it and, in fact, never provided

SPDs to any participants. (*Id.* at 7, ¶¶ 11-12.) He further alleges that Royal Management also

failed to provide participants with copies of the relevant group policy or the "list of participating

Hospital, Qualified Treatment Facilities, Qualified Practitioners and other providers in the

SELECT provider Network." (*Id.* at 9-10, ¶ 23.) He contends that the information disseminated

by Royal Management was confusing (*id.* at 10-11, ¶¶ 24, 26, 29) and, moreover, that Royal

Management neglected to monitor other fiduciaries, including CHPIC, with knowledge that

these failures "would harm the participants and beneficiaries of the plan," (*id.* at 7-8, 11, ¶¶ 15-

20, 27). Royal Management contends that Count III should be dismissed in its entirety.

## A.     *Statutory Penalties under § 1132© for Alleged Violations of § 1024(b)(4)*

Royal Management first argues that Killian's claim for statutory penalties for its alleged

failure to provide documentation cannot stand because it had no duty to provide the information

at issue. (RMC Mem. at 5-6; RMC Reply at 4-5.) ERISA requires the plan administrator, upon

written request, to "furnish a copy of the latest updated [SPD], and the latest annual report, any

terminal report, the bargaining agreement, trust agreement, contract, or other instruments under

which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Plan administrators, like

Royal Management, can be subject to statutory penalties under § 1132© for failure to comply

with this obligation in a timely fashion. 29 U.S.C. § 1132(c)(1) (authorizing the court to impose

fines, at its discretion, for an administrator's failure to mail requested information to the

participant or beneficiary within 30 days); *see Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 758

(7th Cir. 1999). As Royal Management points out, the Seventh Circuit narrowly construes

§ 1024(b)(4), having ruled that "the affirmative obligation to disclose materials under ERISA,

punishable by penalties, extends only to a defined set of documents." *Ames*, 170 F.3d at 759; *Mondry*, 557 F.3d at 796-97; *see also DeBartolo v. Blue Cross/Blue Shield of Ill.*, No. 01 C 5940, 2001 WL 1403012, at *6-7 (N.D. Ill. Nov. 9, 2001). Plan administrators are obligated to provide the materials specifically identified in § 1024(b)(4), as well as "other instruments" that amount to "formal legal documents governing a plan," *Ames*, 170 F.3d at 759, particularly where such documents inform participants about their rights and obligations under the plan. *Mondry*, 557 F.3d at 796 (holding that a plan administrator had a duty to provide the plan participant with a copy of a claims administration agreement, which described the extent of each administrator's authority); *see also DeBartolo*, 2001 WL 1403012, at *7.

Thus, we must determine whether the materials sought by Killian fall under § 1024(b)(4).[16] As Royal Management concedes, Killian's alleged request for an updated copy of the SPD would plainly trigger a § 1024(b)(4) disclosure obligation. (RMC Reply at 5 (noting that "other than the [SPD], all of the documents . . . are outside the scope of § 1024(b)(4)").) Similarly, the group policy sought by Killian would qualify as an "other instrument" that governs the plan and informs participants of their rights thereunder. 29 U.S.C. § 1024(b)(4); *see Mondry*, 557 F.3d at 796. Indeed, the group policy, as discussed earlier, sets out the terms and conditions of Susan's plan. (*See* discussion *supra* at 9, section II.A.) We agree with Royal Management, however, that Killian's alleged request for a "list of participating Hospital, Qualified Treatment Facilities, Qualified Practitioners and other providers in the SELECT provider Network," would not be covered by § 1024(b)(4). (Am. Compl. at 9-10, ¶ 23.) As pled

---

[16] We assume for purposes of this discussion that Killian requested these documents in writing, as necessary to trigger § 1024(b)(4). (*See* Am. Compl. at 6, ¶ 11 (alleging that he requested a copy of the SPD in writing).)

in the Amended Complaint, this list of health care facilities and providers – although presumably useful for plan participants – would not constitute a "formal legal document[] governing a plan." *Ames*, 170 F.3d at 759; *Mondry*, 557 F.3d at 796. As such, we cannot impose § 1132© penalties upon Royal Management for any failure to provide this document. We thus limit Killian's claim for statutory penalties to his allegations concerning the SPD and group policy and dismiss the claim to the extent it is based on the health care facilities and providers list.

**B.**     *Royal Management's Alleged Breach of Fiduciary Duty[17]*

For its remaining argument, Royal Management contends that Killian failed to state a claim for ERISA breach of fiduciary duty because CHPIC – and not Royal Management – provided Killian with the alleged misinformation and, moreover, because CHPIC's misstatements are not sufficient to give rise to such a claim. (RMC Mem. at 7-8; RMC Reply at 4.) In advancing this argument, however, Royal Management overlooks certain allegations of the Amended Complaint, as well as its potential liability for CHPIC's purported misconduct.

To state a claim for breach of fiduciary duty under ERISA against Royal Management, Killian must allege that: (1) Royal Management is a plan fiduciary; (2) Royal Management breached its fiduciary duties; and (3) the breach caused harm to Killian. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007); *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006); *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 848 (N.D. Ill. 2006). Royal

---

[17] In its reply, Royal Management contends that Killian failed to respond to its argument that he could not assert a § 1132(a)(1)(B) claim for benefits against it, as plan administrator. (RMC Reply at 1-2.) Royal Management never raised this argument in its motion or initial memorandum, however, so it should be no surprise that Killian did not respond. We remind the parties that they may not introduce new arguments in a reply brief. *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002).

Management admits that it is a plan fiduciary (RMC Mem. at 7) and thus, only the second and third elements of Killian's claim are contested.

With respect to the second element, Royal Management focuses on Killian's allegations that CHPIC provided misinformation about the extent of Susan's coverage. (RMC Mem. at 7-8; RMC Reply at 4; *see* Am. Compl. at 10, ¶ 25.) Royal Management contends that CHPIC's alleged misstatements cannot be attributed to Royal Management, citing *Kannapien v. Quaker Oats Company*, 507 F.3d at 639. (RMC Mem. at 7.) Royal Management's reliance on *Kannapien* is misplaced. The *Kannapien* court held that plan administrators could not "breach a fiduciary duty vicariously through the actions of a *non-fiduciary*." 507 F.3d at 640 (emphasis added). Because Killian here alleges that CHPIC is also a fiduciary for Susan's plan, the holding in *Kannapien* is irrelevant. (*See* Am. Compl. at 3, ¶¶ 4-5.) *See, e.g.*, 29 U.S.C. § 1105(a) (describing circumstances under which "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect the same plan").

Indeed, Royal Management's argument ignores a significant aspect of Killian's Amended Complaint. In Count III, Killian does not simply allege that Royal Management or CHPIC breached their duties by failing to provide him with sufficient and/or accurate plan information under ERISA. He also alleges that Royal Management breached its fiduciary duty by failing to monitor the conduct of another fiduciary, CHPIC. (Am. Compl. at 7-11, ¶¶ 15-19, 26-27.) Although Royal Management does not address this allegation in its motion, it gives rise to a cognizable claim under ERISA. *See* 29 U.S.C. §§ 1104(a)(1), 1105(a); *see also Jenkins*, 444 F.3d at 924-25; *Leigh v. Engle*, 727 F.2d 113, 135-36 (7th Cir. 1984); *Brieger v. Tellabs, Inc.*, No. 06 C 1882, 2009 WL 1835930, at *17-18 (June 26, 2009); *Smith v. Aon Corp.*, No. 04 C

6875, 2006 WL 1006052, at *7 (N.D. Ill. Apr. 12, 2006); *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1097-99 (N.D. Ill. 2004).  In addition, Killian adequately alleges that Royal Management's knowing breaches of fiduciary duty caused him harm because it resulted in the denial of his benefits claims.  (Am. Compl. at 11, ¶¶ 27-29.)  Although Killian may or may not ultimately prevail on such allegations, they are sufficient to withstand a Rule 12(b)(6) challenge.

## IV.    MOTIONS FOR SANCTIONS

On May 26, 2009, CHP and CHPIC filed two similar motions, requesting the imposition of sanctions and costs against Killian and his attorneys pursuant to Rule 11 and 28 U.S.C. § 1927. (Dkt. Nos. 200, 203.)  CHP and CHPIC essentially contend that Killian and his counsel failed to conduct a sufficient investigation prior to filing this lawsuit and that, had they done so, they would have realized that Killian has no basis for suing CHP.  Before ruling on these motions, we shall provide Killian and his counsel an opportunity to respond by September 10, 2009, if they so choose.  CHP and CHPIC may reply by September 17, 2009.

## CONCLUSION

As discussed above, we convert CHP's motion to dismiss (Dkt. No. 138) into a motion for summary judgment, concerning only the question of whether CHP belongs in this litigation. Killian may submit appropriate material pertinent to this issue by September 10, 2009, and CHP may reply, if necessary, by September 17, 2009.  The briefing schedule for the sanctions motions filed by CHP and CHPIC is identical: Killian's response is due by September 10, 2009, with a reply due September 17, 2009.

We grant CHPIC's motion for summary judgment (Dkt. No. 81) as to any claim by

Killian against CHP or CHPIC under § 1132(c)(1) for failure to provide an SPD or similar documents.  The motion is otherwise denied for the reasons set forth earlier.

We grant Royal Management's motion to dismiss (Dkt. No. 166) as to Killian's claim for § 1132(c) penalties for the alleged failure to provide a list of health care facilities and providers, and we deny it in all other respects.

We also deny, as moot, Killian's pending motion to strike the answer filed by the Royal Plan (Dkt. No. 171), which has since filed an amended answer (Dkt. No. 180).  It is so ordered.

Honorable Marvin E. Aspen
U.S. District Court Judge

Date: August 27, 2009