**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES E. KILLIAN, as Independent Administrator of the Estate of SUSAN M. KILLIAN,<br><br>Plaintiff,<br><br>v.<br><br>CONCERT HEALTH PLAN INSURANCE COMPANY, ROYAL MANAGEMENT CORPORATION HEALTH INSURANCE PLAN, and ROYAL MANAGEMENT CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    No. 07 C 4755<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Presently before us are two motions for summary judgment, one filed by Defendant

Concert Health Plan Insurance Company ("CHPIC") and the other filed by Defendants Royal

Management Corporation Health Insurance Plan ("Royal Plan") and Royal Management

Corporation ("RMC") (collectively, "Royal Defendants"). Defendants seek dismissal of Plaintiff

James Killian's four-count complaint, which alleges violations of the Employee Retirement

Income Security Act ("ERISA"). As administrator of his wife's estate, Killian filed suit after

Susan's[1] insurance provider failed to cover certain medical expenses incurred prior to her death

in August 2006. As set forth below, we grant CHPIC's motion. We grant Royal Defendants'

motion in part and deny it in part.

---

[1] To avoid any confusion, we shall refer to Killian's wife, Susan M. Killian, by her first name.

RMC employed Susan Killian prior to her death in 2006. CHPIC entered into an agreement with RMC to provide health insurance coverage to RMC's eligible employees, effective July 1, 2005. Susan enrolled in the medical benefit plan offered by RMC—defendant Royal Management Corporation Health Insurance Plan—referred to herein as the Royal Plan.[3] (RMC Facts ¶ 4.) RMC is the plan administrator for the Royal Plan. Susan chose a particular insurance coverage level, known as the "SO35" plan option.[4]

In early 2006, Susan was diagnosed with cancer. She was treated at several facilities, including Rush University hospital, where she sought a second opinion from Dr. Bonami. Susan and Killian decided to seek a second opinion on their own, and Susan selected Dr. Bonami based on his prior treatment of her daughter. Prior to Susan's appointment with Dr. Bonami on April 7, 2006, Killian personally made no effort to determine whether, or to what extent, Susan's treatment at Rush would be covered by her insurance. (Resp. to CHPIC Facts ¶¶ 35–38.) Although Killian was not sure whether Susan contacted CHPIC prior to that appointment to

---

[2] We assume familiarity with the background facts of this case, as also described in our earlier summary judgment opinion, *Killian v. Concert Health Plan*, 651 F. Supp. 2d 770, 774–76 (N.D. Ill. 2009) [hereinafter *Killian I*]. Unless otherwise noted, any additional facts included herein are undisputed and culled from the parties' Local Rule 56.1 statements of fact and exhibits. Citations to statements of fact from the previously-filed motion, where necessary, will include docket entry numbers for ease of reference.

[3] Killian's objection to this fact does not contradict the testimony of Madonna Corbett, who has clarified—consistent with RMC's prior assertions—that the plan at issue in the case is called the "Royal Management Corporation Health Insurance Plan." (Resp. to RMC Facts ¶ 2.)

[4] Killian repeatedly complains that neither RMC, nor CHPIC, has submitted an executed copy of Susan's enrollment form showing her selection of the SO35 option. (Resp. to RMC Facts ¶¶ 3, 12–13.) Nonetheless, he previously admitted that she selected that particular plan, and this dispute is immaterial. (Resp. to CHPIC Facts ¶ 12, Dkt. No. 88.)

check on Dr. Bonami's status, Killian testified that she did not appear concerned that Dr. Bonami might be an out-of-network provider. (Resp. to CHPIC Facts ¶¶ 35–36, 38.) He further testified that it was "fair to say" that neither he, nor Susan, attempted to confirm whether Dr. Bonami and Rush were network providers before the April 7 appointment. (*Id.* ¶ 36; *see also* CHPIC Facts, Ex. R, Killian Dep. at 137–39.) In short, the Killians decided to get a second opinion from Dr. Bonami, whether or not that consultation would be covered. (CHPIC Facts ¶ 42; *see also* CHPIC Facts, Ex. R, Killian Dep. at 54–55.)

Immediately prior to the appointment, and after arriving at the hospital, Killian called CHPIC's toll-free number found on the back of Susan's insurance identification card. (CHPIC Facts ¶ 38; CHPIC Facts, Ex. R, Killian Dep. at 51, 53–54, 71–72.) He informed a CHPIC representative that they were obtaining a second opinion. After the April 7, 2006 appointment, Susan underwent surgery, attempted chemotherapy, and obtained emergency services at Rush.

CHPIC later took the position that many of these services at Rush were not fully covered by Susan's insurance because they were out-of-network. (*See* CHPIC Facts, Exs. K–M.) On July 31, 2006, Killian wrote the claims department, requesting an immediate review of several unpaid claims. (*Id.*, Ex. V.) In his letter, Killian stated that the disputed "invoices were refused and the reasons given were over maximum allowable or out of network coverage." (*Id.*) CHPIC's appeals department responded on September 19 and 20, 2006, informing Killian that no additional benefits were payable under Susan's plan because the services at issue were delivered by an out-of-network provider. (CHPIC Facts, Exs. K–L.) The letters explained that because Rush did not fall within the PHCS (Open Access) network, claims from Rush were processed at the out-of-network level, which were subject to a maximum allowable fee.

On October 25, 2006, CHPIC's Appeals Committee again informed Killian that no additional benefits were payable. (*Id.*, Ex. M.) That letter stated that some of the claims (apparently emergency services) were processed at the in-network level. Nonetheless, CHPIC indicated that the maximum allowable fee would still apply for those certain claims being processed in-network. (*Id.* ("Your claims were processed using the maximum allowable fee and processed at the in-network level.").) CHPIC noted that because "medical providers are not required to write-off the over maximum allowed amounts . . . [they] are the responsibility of the member." (*Id.*) Several of Susan's health care providers billed Killian for services not covered by her health plan, and Killian filed suit, seeking, *inter alia*, judgment for the amount of unpaid medical bills.

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56©. A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of

material fact] for trial." Fed. R. Civ. P. 56(e).  In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor.  *See Anderson*, 477 U.S. at 255.

## ANALYSIS

We have before us two summary judgment motions, which overlap in several respects.  Our analysis below will address Killian's claim: (1) against RMC for statutory penalties under 29 U.S.C. §§ 1024(b)(4) and 1132(c)(1); (2) against the Royal Plan and CHPIC for benefits under 29 U.S.C. § 1132(a)(1)(B) as a result of CHPIC's violations of 29 U.S.C. § 1133 regarding notification of benefit determinations; and (3) against RMC and CHPIC for breach of fiduciary duty pursuant to 29 U.S.C. §§ 1105(a) and 1132(a)(3).  We will resolve any pertinent evidentiary disputes as we evaluate each claim.

## I.    Killians's § 1132(c)(1) Claim: Sufficiency of the SPD Provided by RMC[5]

Royal Defendants contend that RMC, as plan administrator, complied with ERISA's requirements governing summary plan descriptions.  They emphasize that Killian requested a copy of the Royal Plan summary plan description ("SPD") on April 28, 2008 pursuant to 29 U.S.C. § 1024(b)(4), and RMC complied on May 5, 2008 as required.  The parties do not dispute that on May 5, 2008, RMC provided copies of the Certificate of Insurance for Susan's SO35 Open Access Plan ("COI") and of RMC's Employee Benefit Summary ("EBS").  (RMC Facts ¶ 31.)  Royal Defendants assert that these two documents, read in conjunction, constitute an SPD

_____

[5] As discussed in our earlier opinion, Killian also alleges that RMC failed to provide him with a copy of the group policy governing Susan's insurance coverage.  *Killian I*, 651 F. Supp. 2d at 781–82.  Neither RMC, nor Killian, directly address this claim and to our knowledge it remains pending.  (*See* RMC Mem. at 8–10; RMC Reply at 6–7.)

that fully complies with ERISA. (RMC Mem. at 9–10; Reply at 5–7.) Killian argues, however, that the COI and EBS do not satisfy ERISA's requirements for an SPD.[6] (Resp. to RMC MSJ at 6–8, 11–12.) Thus, RMC is entitled to summary judgment only if the COI and EBS are, in fact, an acceptable SPD.[7]

The requirements for an SPD are found at 29 U.S.C. § 1022 and in the associated regulations, 29 C.F.R. § 2520.102-2–102-3, both of which dictate that the SPD "shall be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a); 29 C.F.R. § 2520.102-2(a). Although the SPD "shall be sufficiently accurate and comprehensive to reasonably apprise [the] participants and beneficiaries of their rights and obligations under the plan," 29 U.S.C. § 1022(a), the format of the SPD cannot be misleading, 29 C.F.R. § 2520.102-2(b).

Section 1022 sets forth specific items that must be included in an SPD, including, *inter alia*, the name of the plan, the name and address of the plan administrator, and "the plan's

---

[6] Killian is not seeking relief for the alleged violations of 29 U.S.C. §§ 1021(a), 1022 and related regulations. Section 1132(a)(1)(A) authorizes Killian to sue for violations of § 1024(b)(4) (governing requests for SPDs) but not violations of § 1024(b)(1) (governing publication of SPDs to plan participants). *See* 29 U.S.C. § 1132©; *see also Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996) ("To the extent that any plan participant or beneficiary is harmed by a plan administrator's violation of [29 U.S.C. § 1022], 29 U.S.C. § 1132 grants that beneficiary a right of action to recover any benefits due him and to enjoin the act or practice which violates ERISA."); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 622 (7th Cir. 1987) (noting that the operative words of the statute "limit the availability of the § 1132© statutory penalty to a participant" who has "in fact affirmatively requested information"); *Clark v. Hewitt Assoc., LLC*, 294 F. Supp. 2d 946, 951–52 (N.D. Ill. 2003) (noting that § 1132(c)(1)(B) "obliges plan administrators to respond to requests for information, not to supply unsolicited" materials).

[7] Without deciding the question, we assume for purposes of this discussion that an SPD can consist of more than one document without violating ERISA.

requirements respecting eligibility for participation and benefits."  29 U.S.C. § 1022(b).

According to the regulations, an SPD must also contain: (1) the plan sponsor's federal tax

employer identification number ("EIN"); (2) the "type of administration of the plan, e.g. contract

administration, insurer administration, etc.;" (3) the name and address of the plan's authorized

agent for service of process; (4) the procedures governing benefit claims, including time limits

and remedies available; and (5) an accurate, consolidated statement of ERISA rights.  29 C.F.R.

§ 2520.102-3©, (e)–(f), (s)–(t).  The regulations further require an SPD to describe "provisions

governing the use of network providers, the composition of the network, and whether, and under

what circumstances, coverage is provided for out-of-network services."  *Id.* § 2520.102-3(j)(3).

They add that, "[i]n the case of plans with provider networks, the listing of providers may be

furnished as a separate document that accompanies the plan's SPD, provided that the [SPD]

contains a general description of the provider network and . . . a statement that the provider lists

are furnished automatically, without charge."  *Id.*

 Despite RMC's contention, the COI and EBS plainly do not meet ERISA's SPD

standards.  First, the COI cannot be considered part of an SPD.  The EBS instructs the reader to

"refer to your certificate of coverage for a complete outline of covered services, limitations and

exclusions."  (EBS at 1.)  As the "complete outline," the COI by definition cannot also be a

summary.[8]  RMC cannot have it both ways: the COI cannot constitute the critical,

comprehensive benefits portion of the policy and the summary thereof.  *See, e.g.*, *Herrmann v.*

*Cencom Cable Assocs.*, 978 F.2d 978, 983 (7th Cir. 1992) ("[N]o document can include every

---

[8] Because the COI is the only certificate attached to the Master Group Policy provided by
RMC, we reason that the COI is the pertinent "certificate of coverage" referenced in the EBS.

detail and remain a summary."); *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 740–41 (N.D. Ill. 1996) (relatedly noting that "one document cannot constitute both the plan description and the SPD"); *Everson v. Blue Cross and Blue Shield of Ohio*, 898 F. Supp. 532, 536 (N.D. Ohio 1994) ("Because the plan and a *summary* of the plan require two distinct documents, the Subscriber Certificate, in this case, cannot also be a summary plan description.").  Moreover, the COI is hardly a summary of anything, as it consists of approximately 50 pages of detailed information.

Turning then to the EBS, we find that it fails to satisfy several essential SPD requirements.  The EBS, for example, does not provide the official names of the plan or the plan administrator, the administrator's contact information, the plan sponsor's EIN, or the name and address of the agent for service of legal process.  It lacks any mention of claims review procedures, as well as the mandatory, consolidated statement of ERISA rights.  As is particularly relevant here, RMC also omitted the necessary description of network providers from the EBS.  Although the EBS summarizes the network and out-of-network coverages offered in Susan's SO35 Open Access Plan, it does not describe the composition of the network or state "that the provider lists are furnished automatically, without charge."  29 C.F.R. § 2520.102-3(j)(3).

In addition, the EBS does not sufficiently apprise participants and beneficiaries that payment for out-of-network services is subject to a Maximum Allowable Fee.  The EBS includes a footnote at the head of the "Non-Network" column, which states that: "Non-Network services are subject to Maximum Allowable Fee limitations.  The Patient will be responsible for any charges over these limits."  The EBS does not elaborate on what the Maximum Allowable Fee is or when it applies.  This footnote reference does not comport with ERISA's requirement that the

"advantages and disadvantages of the plan shall be presented without either exaggerating the benefits or minimizing the limitations." 29 C.F.R. § 2520.102-2(b). As the regulations make clear, any description of coverage limitations, reductions or restrictions may "not be minimized, rendered obscure or otherwise made to appear unimportant." *Id.* Any such limitations must be presented "in a manner not less prominent than the style, captions, printing type, and prominence used" to summarize plan benefits. *Id.* Yet, the EBS includes this important information in precisely the proscribed fashion—in a footnote—minimizing it and making it appear less important. Under these circumstances, RMC is not entitled to summary judgment on Killian's § 1132(c)(1) claim.[9] We are not prepared to impose a statutory penalty award at this time, particularly as Killian has not moved for summary judgment. We reserve that issue for later review after further briefing. *See* 29 U.S.C. § 1132(c)(1)(B) (providing that the court has discretion when imposing a penalty award).

## II.   Killian's § 1132(a)(1)(B) Claim for Benefits

### A.   *RMC's Potential Liability for Killian's Benefit Claims*

As a preliminary matter with respect to Killian's § 1132(a)(1)(B) benefits claim, we first resolve Royal Defendants' contention that they cannot be held liable as a matter of law. Royal Defendants argue that the Royal Plan cannot be held liable because, although the Royal Plan is "the plan," only CHPIC was responsible for claims administration, determination and review. (RMC Mem. at 5–6; RMC Reply at 2–3.) Royal Defendants cite to cases out of the First Circuit in support of their proposition that the only proper defendant in an ERISA benefits action "is the

---

[9] RMC argues that Susan fully understood the terms of the Plan, (RMC Reply at 6–7), but her comprehension is irrelevant to the present question: whether the documents provided to Killian in response to his April 28, 2008 request comply with ERISA.

party who controls administration of the plan." (RMC Mem. at 5.)

The Seventh Circuit, however, has explicitly held that—with few exceptions not at issue here[10]—an ERISA plaintiff "is limited to a suit against the Plan." *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007); *Blickenstaff v. R.R. Donnelly & Sons Co. Short Term Disability Plan*, 378 F.3d 669, 674 (7th Cir. 2004); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996). The Seventh Circuit's binding decisions mandate that the Royal Plan is a proper defendant, regardless of Royal Defendants' role in actual claims administration. *See Blickenstaff*, 378 F.3d at 674 (noting that a 502(a)(1)(B) claim for benefits "is limited to a suit against the Plan, not an employer . . . or the claims evaluator"); *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1089 (N.D. Ill. 2005) (reviewing Seventh Circuit authorities and stating that "a plaintiff typically should not bring a claim under 502(a)(1)(B) against an employer or claims evaluator"); *see also Witowski v. Tetra Tech, Inc.*, 38 F. Supp. 2d 640, 644–45 (N.D. Ill. 1998) (discussing but rejecting the First Circuit's precedent allowing employers and claims administrators to be sued for a benefits claim because "the Seventh Circuit has made its position clear: only the plan as an entity is the appropriate party to sue"). Although Royal Defendants contend that CHPIC is an ERISA fiduciary for benefit determination purposes, (RMC Mem. at 5–6), they do not explain how this fact would get the Royal Plan off the hook.[11] Accordingly, we decline to grant summary judgment for the Royal Plan on these grounds with

---

[10] RMC has not argued that any of the exceptions to the general rule apply here.

[11] To the extent the Royal Defendants thus suggested an argument based on 29 U.S.C. § 1105(c)(2), they neglected to develop it. *See* 29 U.S.C. § 1105(c)(2) (discussing how a named plan fiduciary may allocate certain responsibilities to other persons and limit the fiduciary's own liability).

respect to Killian's § 1132(a)(1)(B) claim.

B.      *Standard of Review for Killian's Benefits Claim*

We turn then to the common argument shared by the Royal Plan and CHPIC: that CHPIC's review and payment of Susan's claims was proper under the terms of the Royal Plan documents. (RMC Mem. at 7–8; RMC Reply at 3–5; CHPIC Mem. at 5–9, 12–13; CHPIC Reply at 6–7.) In reviewing ERISA claims, we apply a de novo standard of review unless the relevant plan grants the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956, (1989); *Ramsey v. Hercules Inc.*, 77 F.3d 199, 202 (7th Cir. 1996). If the plan grants such discretion, the appropriate level of review is "the deferential arbitrary and capricious standard." *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005); *see Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 659 (7th Cir. 2009). Under that standard, an administrator's decision will not be disturbed as long as it falls within the range of reasonable interpretations of the plan's language. *Green v. UPS Health and Welfare Package for Retired Employees*, 595 F.3d 734, 737–38 (7th Cir. 2010); *Wetzler v. Ill. CPA Soc. & Found. Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009); *Mote*, 502 F.3d at 606.

Accordingly, we must review the documents governing the Royal Plan to determine the appropriate standard of review. Here, both RMC and CHPIC submitted copies of the Royal Plan's Master Group Policy ("Policy").[12] (RMC Facts, Ex. 1A; CHPIC Facts, Exs. D–H.)

---

[12] Although Killian raises several peripheral arguments opposing Defendants' introduction of the Policy as evidence, he fails to raise a genuine question as to its authenticity. Moreover, Killian's arguments are irrelevant, as he does not actually challenge the contents of the Policy. To the contrary, and as discussed herein, he contends that the Policy failed to give adequate notice of CHPIC's alleged reservation of discretion because the Group Application

Defendants point to the Employer Group Application ("Application") section of the Policy[13] as the source of CHPIC's authority to determine claims benefits and interpret the Policy's terms. (CHPIC Mem. at 12–13; RMC Mem. at 7–8.)  The Application states, in pertinent part, that CHPIC "as administrator for claims determination and as ERISA claims review fiduciary . . . shall have full and exclusive discretionary authority to: 1) interpret Policy or Group Plan provisions, 2) make decisions regarding eligibility for coverage and benefits, and 3) resolve factual questions related to coverage and benefits."  (RMC Facts, Ex. 1A, Application (Dkt. No. 259-2, p. 77 of 80).)  Defendants contend that this language unambiguously vests CHPIC with deferential authority.

Killian counters that the language does not trigger the arbitrary and capricious standard of review because the Application is not provided to participants and, thus, the reservation of discretion is not communicated to them.  (Resp. to CHPIC MSJ at 4–5; Resp. to RMC MSJ at 4–5.)  He  relies on the Seventh Circuit's decision in *Ruttenberg v. United States Life Insurance Company*, 413 F.3d at 659–60.  In *Ruttenberg*, the Seventh Circuit considered whether discretionary language contained in a policy application sufficiently notified the insured that the administrator retained interpretive discretion.  413 F.3d at 659–60.  The court held that because

---

[13] portion of the Policy containing the critical language was not furnished to participants.  (Resp. to CHPIC MSJ at 4–5; Resp. to RMC MSJ at 4–5.)  We need not address each of Killian's evidentiary arguments in detail, particularly as Madonna Corbett's declaration authenticates the Policy for our purposes here.  (RMC Facts, Ex. 1, Corbett Decl. ¶¶ 3–8.)

Relatedly, and having reviewed the two copies of the Policy page-by-page, we find that they are substantively identical in all important aspects.

[13] The Policy for the Royal Plan included four sections: (1) General Provisions; (2) the COI relevant to Susan's SO35 plan (and other COIs not relevant here); (3) the Application; and (4) the Schedule of Premiums.  (RMC Facts, Ex. 1, Corbett Decl. ¶¶ 7–8 & Exs. A–D.)

the pertinent language was not included in any policy document—but only the separate application—the administrator "was not entitled to arbitrary and capricious review of its interpretations." *Id.*

Unlike in *Ruttenberg*, however, the Application in this case is part and parcel of the Policy. (RMC Facts, Ex. 1A, Part C (Dkt. No. 259-2, p. 73 of 80); *see also* RMC Facts, Ex. 1, Corbett Decl. ¶¶ 7–8.) The cover sheet for Part C of the Policy explicitly states that "[t]he attached . . . *Employer* Application is made a part of this Policy." (*Id.*) Accordingly, the Application is not simply a precursor to the contractual relationship between RMC and CHPIC but is also a formal section of the governing Royal Plan document. *See, e.g.*, *Ruttenberg*, 413 F.3d at 660 (declining to hold that the "boilerplate language in a contract application–representing the negotiations leading to contract formation rather than the substance of the contract"–constitutes sufficient notice). Under similar circumstances, the Seventh Circuit held that "discretion-granting language can be on any page of a multi-page plan," even where the language falls in a separate section, such as a certificate of insurance. *Shyman v . Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005) (finding discretion-granting language in the certificate of insurance to be sufficient and noting that "[i]t is unimportant that one document is captioned 'certificate' and another bears the legend 'policy'").[14]

In accordance with Seventh Circuit precedent, we cannot find that the placement of the discretion-granting language in the Application negates its utility. *See Orlando v. United of*

_____

[14] Killian also cites to the deposition testimony of Johny Antony, CHPIC's Vice President of Operations, who said that plan participants do not receive a copy of the Application. (Resp. to CHPIC MSJ at 5; *see* CHPIC Facts, Ex. C, Antony Dep. at 60:6–8.) Nonetheless, the Application is part of the Policy.

*Omaha Life Ins. Co.*, No. 06 C 3758, 2008 WL 4874731, at *3–4 (N.D. Ill. July 29, 2008)

(reluctantly holding that discretion-granting language included in a rider, which was

incorporated in the policy, entitled defendant to the arbitrary and capricious standard of review);

*Hopkins v. Prudential Ins. Co. of Am.*, 432 F. Supp. 2d 745, 757–58 (N.D. Ill. 2006) (declining

to impose deferential standard of review based on discretion-granting language contained in an

SPD that was expressly not part of the plan).  Killian does not contest the adequacy of the

Application's discretion-granting language, and we find the language itself clearly reserves

discretionary authority.  *See Marrs v. Motorola, Inc.*, 577 F.3d 783, 786 (7th Cir. 2009) (finding

discretion conferred on administrator where plan included similar language); *see, e.g.*, *Diaz v.

Prudential Ins. Co.*, 424 F.3d 635, 639–40 (7th Cir. 2005); *Herzberger v. Standard Ins. Co.*, 205

F.3d 327, 331–33 (7th Cir. 2000)  We thus conclude that the arbitrary and capricious standard of

review is appropriate in this case.

> C.      *Analysis of Benefits Claim*

In his § 1132(a)(1)(B) benefits claim, Killian alleges that CHPIC and the Royal Plan are

responsible for Susan's unpaid medical bills because CHPIC "failed to comply with the

regulations regarding notification of benefit determinations."[15]  (Compl. at 2–4.)  As the Seventh

Circuit has repeatedly held, we may "reverse a[n] [administrator's] determination as arbitrary

and capricious if it fails to substantially comply with [ERISA's § 1133 notification]

requirements."  *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 396 (7th Cir.

2009); *see also Raybourne v. Cigna Life Ins. Co. of NY*, 576 F.3d 444, 449 (7th Cir. 2009)

---

[15]  Significantly, however, Killian does not argue that CHPIC's decision was arbitrary or
capricious on its merits.  That is, he does not contest CHPIC's conclusion that no further benefits
were payable because the health care providers at issue were out of Susan's network.

-14-

(explaining that the "court will uphold the administrator's decision" as long as "specific reasons for the denial are communicated to the claimant"); *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992) (noting that significant procedural errors may constitute mistakes of law warranting rejection of an administrator's decision); *Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir. 1983) (concluding that the administrator's violations of § 1133 amounted to a "significant error on a question of law," rendering its benefits determination arbitrary and capricious). Accordingly, this benefits claim hinges on the sufficiency of three notification letters that CHPIC sent to Killian after he requested review of the initial denial[16] of several of Susan's claims.[17]

ERISA decrees that every employee benefit plan "provide adequate notice in writing to any participant or beneficiary whose claims for benefits . . . has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133. According to the regulations, ERISA thus requires administrators to issue notifications of adverse benefit determinations that include the following: (1) the specific reasons for the decision; (2) a reference to the specific plan provision on which the determination is based; (3) a statement that the claimant is entitled to receive and review, upon request, documents and other information relevant to the claim; and (4) a statement

---

[16] CHPIC's continued insistence that it did not render an adverse benefit determination because there was no "denial" of Killian's claims is unfounded and, moreover, defies common sense. *See Killian I*, 651 F. Supp. 2d at 778 n.13. CHPIC offers no legal authority for its conclusion that "no claims were denied." (CHPIC Mem. at 7.) Perhaps these denials were entirely legal and appropriate—but, without any authority, we cannot agree with CHPIC that "no denial of coverage triggered a notification requirement." (*Id.*)

[17] As noted in our earlier opinion, neither party has addressed CHPIC's preliminary benefits determinations and notifications. *Killian I*, 651 F. Supp. 2d at 778 n.12. Killian's claim is limited to three letters issued after Killian sought review of CHPIC's initial determination. *Id.*

describing voluntary appeal procedures offered by the plan, as well as the claimant's right to sue under § 1132(a). 29 C.F.R. § 2560.503-1(j).[18] The regulations provide that—in the case of a group health plan like the Royal Plan—such notifications should also inform the claimant of any "specific rule, guideline, protocol, or other similar criterion" used in reaching the decision and note that a copy thereof "will be provided free of charge to the claimant upon request." *Id.* § 2560.503-1(j)(5)(I). The notification should also include a form statement, which informs the claimant that dispute resolution options may be available. *Id.* § 2560.503-1(j)(5)(iii). The purpose of these requirement is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial," both administratively and in federal court. *Love*, 574 F.3d at 396; *Halpin*, 962 F.2d at 689, 693; *Wolfe*, 710 F.2d at 391–92. We may reject a denial of benefits if the administrator's notification does not substantially comply with these regulations; strict compliance is not necessary. *Love*, 574 F.3d at 396; *Militello v. Central States*, 360 F.3d 681, 689 (7th Cir. 2004); *Halpin*, 962 F.2d at 690.

Here, CHPIC issued two letters in response to Killian's July 31, 2006 request for review of three particular claims that CHPIC had denied, totaling nearly $80,000 in surgery-related expenses. (CHPIC Facts, Ex. V & its attached explanation of benefit letters (detailing the claim numbers, costs incurred and amounts paid).) On September 19 and 20, 2006, CHPIC confirmed in writing that Killian's claims had been reviewed but stated that no additional benefits were due because an out-of-network provider rendered the services in dispute. (CHPIC Facts, Exs. K–L.)

---

[18] In evaluating the sufficiency of the three letters challenged here, we look to the regulations governing notifications of adverse benefit determinations *on review* as opposed to those governing *initial* adverse benefit determinations. *See, e.g.*, 29 C.F.R. § 2560.503-1(g) (discussing requirements for initial benefit notifications).

The letters, which are identical, note that the "member's policy contains information regarding how benefits are paid when an out-of-network" provider is used. (*Id.*) The letters then state that "[s]ince (Rush University, University Anesthesiologists & Chicago Inst. of Neurosurgery) is not in the PHCS (Open Access) network, claims are processed at the out-of-network level. Out-of-network claims are subject to a Maximum Allowable Fee." (*Id.*) Some additional information is included, generally describing CHPIC's determination of the maximum allowable fee. (*Id.*) The letter closes by adding that "[a]ll covered services are payable on a maximum allowable fee basis for out-of-network providers and according to contract rates for participating providers, and are subject to specific conditions, durational limitations and all applicable maximums of the policy." (*Id.*)

CHPIC's October 25, 2006 letter to Killian includes similar information.[19] It reiterates that it denied several of Susan's claims because she sought medical attention "from providers that are not in your insurance network." (CHPIC Facts, Ex. M.) It does not specify which claims are addressed in the letter but notes that relevant services took place on April 7, 2006.[20] (*Id.*) It explains that CHPIC processed one of the services at the in-network level but that "all out-of-network covered services are payable on a maximum allowable fee basis." (*Id.*) CHPIC informed Killian that because "medical providers are not required to write-off the over maximum

---

[19] The record does not indicate what precipitated this additional notification letter. As a result, we cannot determine whether the regulations apply to it. While we address it generally along with the September 19 and 20, 2006 letters, this October 25, 2006 notification appears to be inconsequential.

[20] Killian does not appear to be contesting CHPIC's decisions with respect to the services rendered on June 30, 2006, which are mentioned in this October 25, 2006 letter. The claims at issue, as described in his appeal letter to the CHPIC claims department, relate to Susan's surgery and hospitalization in April 2006. (*See* CHPIC Facts, Ex. M.)

allowed amounts," such amounts are the member's responsibility.  (*Id.*)

These letters do not strictly comply with the regulations.  CHPIC failed to identify, by name, any "specific rule, guideline, protocol, or other similar criterion" used in reaching the decision.  29 C.F.R. § 2560.503-1(j)(5).  The letters neglect to inform Killian that a copy of any relevant document, rule or other information will be provided to him at no cost, upon request. *Id.*  The letters also say nothing about CHPIC's internal appeals procedures, available dispute resolution options, or Killian's right to sue under 29 U.S.C. § 1132(a).  (*Id.*)  Indeed, as Killian has emphasized throughout these proceedings, these notifications letters are quite sloppy.  For example, they refer to Susan's network as the PHCS (Open Access) Network, even though that is not the network mentioned in the COI.[21]

Despite these technical deficiencies, the notifications plainly inform Killian of the specific reason for CHPIC's decision.  The letters consistently and unambiguously explain that the claims at issue were not payable because Susan received treatment from providers who were not in her network.  (CHPIC Facts, Exs. K–M.)  CHPIC processed the claims accordingly, and Susan's benefits were subject to a maximum allowable fee under her policy.  The letters thus comply with 29 C.F.R. § 2560.503-1(j)(1).

Although the letters do not point to a specific provision within the Policy, they direct the reader to it.  Moreover, they satisfy the need for such a reference by including pertinent Policy terms, pursuant to 29 C.F.R. §§ 2560.503-1(j)(2) and (5)(I).  Section 1 of the COI—the Schedule

---

[21] The COI refers to the "SELECT provider Network."  (*See, e.g.*, RMC Facts, Ex. 1A at 4.)  The EBS and enrollment package materials, however, state that the network is PHCS Open Access.  (RMC Facts, Exs. 1B–1C.)  Neither RMC, nor CHPIC, attempt to explain this discrepancy.  Regardless, these conflicting references are ultimately immaterial.

of Benefits for Susan's plan (and the first page of substance following all generic, required notices and disclaimers)—states that expenses billed by out-of-network providers "are payable on a Maximum Allowable Amount basis and are subject to specific conditions, durational limitations and all applicable maximums of the policy." (RMC Facts, Ex. 1A.) Maximum Allowable Amount is defined at Section 2 of the COI as "the amount determined by [CHPIC] as payment in full for a particular" service. (*Id.* at 19.) The definition adds that CHPIC sets this amount using the Medical Resource Based Relative Value Scale (RBRVS) and again notes that all payments for services rendered by out-of-network "providers will be based on the Maximum Allowable Amount." (*Id.*) The September 19 and 20, 2006 letters incorporate this same information from the COI. (CHPIC Facts, Exs. K–L.) As a result, it would be unreasonable to fault CHPIC for not referencing a particular Policy provision when it republished the critical Policy information in the text of the letter.

On the whole, we conclude that CHPIC's letters substantially comply with ERISA's notification requirements. The purpose of § 1133 and its regulations is to ensure that the claimant is "supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review." *Halpin*, 962 F.2d at 690; *see Gallo v. Amoco Corp.*, 102 F.3d 918, 922–23 (7th Cir. 1997); *Renaldi v. Sears Roebuck & Co.*, No. 97 C 6057, 2001 WL 290372, at *18–20 (N.D. Ill. Mar. 21, 2001); *Bussey v. Corning Life Servs., Inc.*, No. 97 C 8875, 2000 WL 91916, at *7 (N.D. Ill. Jan. 19, 2000). Here, CHPIC supplied Killian with its reason for partially denying Susan's out-of-network claims, and this explanation permitted Killian to appeal that decision. Killian not only petitioned CHPIC for review but also mounted this legal action. *See Gallo*, 102 F.3d at

922–23 (concluding that "nothing more was required" where the administrator's letter enabled plaintiff to challenge the denial decision before the administrator and in his lawsuit). And while this lawsuit has seen many twists and turns, this benefits claim based on § 1133 violations is the sole claim Killian understood and pursued from the start. (Original Compl. ¶ 5, Dkt. No. 1 (alleging that CHPIC "made an 'adverse benefit determination' . . . but failed to comply with the regulations regarding notification of benefit determinations").) Importantly, Killian has not argued that he could not comprehend CHPIC's decision, that he was unable to challenge it, or that it was wrong. *See Bussey*, 2000 WL 91916, at *8 ("Here, plaintiff did not allege in his amended complaint, nor does he now argue, that he has insufficient information from which to understand the reasons for Aetna's denial of benefits."). Under these circumstances, the technical defects of CHPIC's letters do not warrant a finding that the decision itself was arbitrary and capricious.

Even if we concluded that CHPIC violated § 1133, the only appropriate remedy for Killian would be a remand back to CHPIC for reevaluation of his claims. *Love*, 574 F.3d at 398; *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998); *Gallo*, 102 F.3d at 923; *Wolfe*, 710 F.2d at 393. A remand in this instance, however, would be a "useless formality." *Schleibaum*, 153 F.3d at 503; *Wolfe*, 710 F.2d at 394; *Bussey*, 2000 WL 91916, at *8; *Rowell v. Life Ins. Co. of N. Am.*, NO. 96 C 8076, 1998 WL 708805, at *8 (N.D. Ill. Sept. 30, 1998). As discussed, Killian does not allege that CHPIC's decision was incorrect; he does not claim that these particular healthcare providers were actually in Susan's network, entitling him to further payment under the Policy. There is no point sending this matter back to CHPIC simply for it to draft a strictly-compliant letter that would tell Killian what he already knows and does not

dispute. *See Bussey*, 2000 WL 91916, at *8 ("Because not even plaintiff seriously disputes the merits of the denial, fairness does not require that Aetna's decision be overturned or remanded for further review."); *Rowell*, 1998 WL 708805, at *8; *see also Renaldi*, 2001 WL 290372, at *20 (foreclosing further review where plaintiff failed to show what additional information he might have that "could have changed the result of the appeals process"). Accordingly, we decline to issue a remand and dismiss Killian's benefits claim.[22]

## IV.    Killian's Claims for Breach of Fiduciary Duty

Finally, we turn to Killian's claims against RMC and CHPIC for breach of fiduciary duty. To prevail on a claim for breach of fiduciary duty under ERISA, Killian must prove that: (1) defendants are plan fiduciaries;[23] (2) they breached their fiduciary duties; and (3) the breach or breaches caused harm to Killian. *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007); *Jenkins v. Yager*, 444 F.3d 916, 924 (7th Cir. 2006); *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 848 (N.D. Ill. 2006). Killian alleges that RMC breached its fiduciary duty by impermissibly delegating its duties with respect to claims administration to CHPIC and by failing to provide adequate information to participants, including its SPD (the EBS discussed earlier). (Compl. at 7–11.) Killian contends that CHPIC is liable as a co-fiduciary for RMC's transgressions, pursuant to 29 U.S.C. § 1105(a). (*Id.* at 12.)

---

[22] For the sake of clarity, we add that § 1132(c), which provides statutory penalties for other notice violations as discussed earlier, does not offer a remedy for violations of § 1133. *Wilczynski v. Lumbermans Mut. Cas. Co.*, 93 F.3d 397, 405–07 (7th Cir. 1996). The appropriate remedy for a § 1133 violation is typically either remand to the administrator or reinstatement of benefits, neither of which apply here. *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009); *Love*, 574 F.3d at 398; *Halpin*, 962 F.2d at 697–98.

[23] RMC and CHPIC concede that they are plan fiduciaries.

We turn first to Killian's contention that RMC improperly delegated its claims administration responsibilities to CHPIC and then failed to monitor CHPIC's performance of those duties. (Compl. at 7–8.) Killian argues that the Royal Plan does not authorize RMC to allocate any of its fiduciary responsibilities to another entity, such as CHPIC. (Resp. to CHPIC MSJ at 13–14.) He contends that RMC did so but neglected to monitor CHPIC, demonstrated by the fact that: (1) there was no communication between the entities; and (2) Madonna Corbett, RMC's Human Resources Director, "was oblivious of her responsibilities." (*Id.* at 13–14.)

There are several fatal flaws with Killian's theory, even if we assume that RMC abdicated its role as claims fiduciary in violation of the Royal Plan. Killian has not alleged that the nature of the relationship between RMC and CHPIC—whatever it is—caused him any harm. He complains that the parties neglected to communicate with each other and that RMC's human resources department had no idea how to comply with ERISA. That may be, but neither of these alleged problems worked to his disadvantage. Moreover, to the extent that he argues that RMC and CHPIC are liable for the benefits denial, this claim cannot stand. As discussed above, CHPIC's decision was not arbitrary and capricious. Furthermore, even if CHPIC was wrong, "it takes more than a mistaken decision by the claims administrator to establish a breach of fiduciary duty claim." *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009); *see Lister v. Stark*, No. 88 C 9801, 1989 WL 88241, at *6 (N.D. Ill. Aug. 1, 1989) (refusing to recognize a fiduciary duty claim based on a simply denial of benefits because "[t]o breach one's fiduciary duty, an ERISA trustee must do more (and worse) than wrongfully construing the plan provisions"), *rev'd in part on other grounds*, 942 F.2d 1183 (7th Cir. 1991).

Killian's claim based on RMC's failure to publish certain materials also fails. Killian

laments that RMC failed to provide a list of network providers, as well as an SPD that complied with ERISA. (Resp. to RMC MSJ at 8–9; Compl. at 9–11.) "[W]hile there is a duty to provide accurate information under ERISA, negligence in fulfilling that duty is not actionable." *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 642 (7th Cir. 2004); *Kannapien*, 507 F.3d at 639. Indeed, "[a]n employer's procedural violations of ERISA entitle employees to monetary relief only in exceptional circumstances." *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 979 (7th Cir. 1999). Exceptional circumstances exist and would give rise to a cause of action only upon "a showing of bad faith, active concealment or detrimental reliance." *Andersen v. Chrysler Corp.*, 99 F.3d 846, 859 (7th Cir. 1996); *Jackson*, 176 F.3d at 979; *Kreutzer*, 951 F.2d at 743.

We have no evidence of such circumstances before us. Killian has not alleged—and there is no evidence—that RMC or CHPIC acted in bad faith. Killian alleges that RMC "knew that its failure to carry out its duties . . . would harm" participants, (Compl. at 11), but this wholly unsubstantiated allegation does not demonstrate bad faith or prove that Defendants intended to mislead or deceive participants. *See Vallone*, 375 F.3d at 642 (affirming dismissal of breach of fiduciary duty claim where plaintiff had no evidence that the employer "purposefully intended to confuse plan participants"); *Honeysett v. Allstate Ins. Co.*, 570 F. Supp. 2d 994, 1000 (N.D. Ill. 2008) (noting that where communications to plan participants are inaccurate or incomplete, "evidence that the fiduciaries intended to mislead the participants can establish a violation of the duty of loyalty"). Killian contends he suffered harm because he still owes $80,000 in medical bills. (Resp. to RMC MSJ at 11.) While unfortunate, that fact alone is not proof of bad faith, purposeful concealment or detrimental reliance. It is undisputed that Killian

and his wife made the decision to seek treatment at Rush without consulting the COI, SPD or any other source and without confirming whether Susan's providers fell within her network. (Resp. to CHPIC Facts ¶ 36; CHPIC Facts, Ex. R, Killian Dep. at 54–55, 137–39.) Accordingly, the Killians did not rely on any statement made by RMC (or CHPIC) to their detriment. RMC and CHPIC are thus entitled to summary judgment on the breach of fiduciary duty claims.

## CONCLUSION

For the reasons set forth above, we grant CHPIC's motion in its entirety. The Royal Defendants' motion is granted in part, and denied in part. All that remains of this case is Killian's claim against RMC under 29 U.S.C. § 1132(c), based on (1) the insufficiency of the EBS as an SPD; and (2) RMC's alleged failure to provide Killian with a copy of the Policy.[24]

We order Killian to file a memorandum addressing any remedy he seeks for RMC's violation of 29 U.S.C. § 1024(b)(4) relating to the SPD, on or by July 16, 2010. RMC may respond no later than July 30, 2010, and Killian may submit a reply no later than August 6, 2010. The status call set for July 22, 2010 is vacated and reset for September 2, 2010 at 10:30 a.m. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: July 6, 2010

---

[24] Based on the parties' briefs, we cannot determine the status of Killian's claim concerning his written request for the Policy. Accordingly, this ruling does not affect that claim but the parties may address it in their supplemental briefing.