UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES KILLIAN, as Independent Administrator of the Estate of SUSAN M. KILLIAN,<br><br>                Plaintiff,<br><br>    vs.<br><br>CONCERT HEALTH PLAN, CONCERT HEALTH PLAN INSURANCE COMPANY, ROYAL MANAGEMENT CORPORATION HEALTH INSURANCE PLAN, and ROYAL MANAGEMENT CORPORATION,<br><br>                Defendants. | 07 C 4755<br><br>Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

James Killian, as administrator of his wife Susan Killian's estate, brought this action against Concert Health Plan Insurance Company ("CHPIC"), Concert Health Plan ("CHP"), Royal Management Corporation ("RMC"), and Royal Management Corporation Health Insurance Plan ("Royal Plan"), alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA"). RMC entered into an agreement with CHPIC to provide health insurance coverage to RMC employees. Susan, an RMC employee, enrolled in the Royal Plan, which was administered by RMC. After being diagnosed with cancer, Susan obtained treatment at Rush University Hospital, an out-of-network facility, and was denied coverage for her medical bills. James sued, claiming that Defendants wrongly denied benefits, breached their fiduciary duties, and failed to disclose plan documents.

Earlier decisions, familiarity with which is assumed, have resolved all claims against CHP, CHPIC, and the Royal Plan, and some claims against RMC. *See* 651 F. Supp. 2d 770

(N.D. Ill. 2009) (Aspen, J.) (dismissing claims against CHPIC and CHP for penalties under 28 U.S.C. § 1132(c)(1), and dismissing portion of claim against RMC for penalties under 28 U.S.C. § 1132(c)(1)); Doc. 232 (dismissing all remaining claims against CHP) (Aspen, J.); 2010 WL 2681107 (N.D. Ill. July 6, 2010) (Aspen, J.) (dismissing claims against CHPIC, the Royal Plan, and RMC for breach of fiduciary duty and for wrongful denial of ERISA benefits); 2010 WL 3000205 (N.D. Ill. July 28, 2010) (Aspen, J.) (denying Killian's motion to reconsider order of July 6, 2010). Remaining for decision is whether RMC must pay James a statutory penalty under 29 U.S.C. § 1132(c)(1) due to RMC's violation of its duty under 29 U.S.C. § 1024(b)(4) to provide an adequate summary plan description ("SPD") within thirty days of James' April 28, 2008 request. *See* 2010 WL 2681107, at *4. Also before the court are two motions filed by CHPIC, one for attorney fees under 29 U.S.C. § 1132(g)(1), and the other for leave to re-file an earlier motion seeking sanctions under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

For the following reasons, RMC shall pay Killian a statutory penalty of $5,880, reflecting a $10 per day assessment for the duration of RMC's § 1024(b)(4) violation. CHPIC's motion for attorney fees under § 1132(g)(1) is denied. CHPIC is granted leave to re-file its sanctions motion, but the motion itself is denied.

**I.     James' Claim for Statutory Penalties Against RMC**

Section 1024(b)(4) of Title 29 provides that an ERISA plan administrator "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated [SPD]." 29 U.S.C. § 1024(b)(4). Section 1132(c)(1) provides that a court may impose statutory penalties against a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required … to furnish to a participant or beneficiary … within 30 days after such request." *Id*. § 1132(c)(1). Section 1132(c)(1) further provides that the penalty

can reach up to "$100 a day from the date of such failure or refusal"—the Secretary of Labor promulgated regulations increasing the maximum daily penalty to $110, *see* 29 C.F.R. § 2575.502c-1—but the actual amount and even whether to impose a penalty at all are issues left to the court's "discretion." 29 U.S.C. § 1132(c)(1); *see Neuma, Inc. v. AMP, Inc.*, 2002 WL 264898, at *4 (N.D. Ill. Feb. 22, 2002).

Here, RMC responded within thirty days to James' request for an SPD, but rather than provide an actual SPD, RMC tendered a copy of the Certificate of Insurance for Susan's S035 Open Access Plan ("COI") and of RMC's Employee Benefits Summary ("EBS"). Judge Aspen rejected RMC's submission that the COI and EBS, considered together, constitute an ERISA-compliant SPD, held that RMC thus violated § 1024(b)(4), but reserved the question whether to impose a statutory penalty under § 1132(c)(1). *See* 2010 WL 2681107, at *3-4. RMC contends that no penalty should be imposed because it did not act in bad faith, and also because James suffered no harm and labored under no confusion from RMC's failure to provide a technically compliant SPD.

Where the plan administrator timely responds to a request for documents, but the documents provided fail to satisfy ERISA, a penalty may be imposed. *See Kasireddy v. Bank of Am. Corp. Corporate Benefits Comm.*, 2010 WL 4168512 (N.D. Ill. Oct. 13, 2010); *Jackson v. E.J. Brach Corp.*, 937 F. Supp. 735, 740 (N.D. Ill. 1996). Section 1132(c)(1) creates an incentive for plan administrators to draft, maintain, and timely disclose plan documents, thus ensuring that participants are informed of available benefits and the procedures necessary to obtain such benefits. *See Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 520 F. Supp. 2d 1022, 1030 (N.D. Ill. 2007) ("The purpose of Section 1132(c)(1) of ERISA is not so much to penalize as it is to induce plan administrators to comply with the notice requirements

and a participant's request for information.") (internal quotation marks omitted). "In deciding whether to assess penalties for untimely responses, appropriate factors to be considered include the length of the delay, the number of requests made and documents withheld, whether there is evidence the administrator acted in bad faith, and whether assessing a fine would further any purpose of ERISA." *Id*. at 1044. Thus, while bad faith and prejudice are relevant to whether a penalty should be imposed, the absence of either or both does not categorically foreclose a penalty. *See Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993); *Jackson*, 937 F. Supp. at 741-42; *Piggot v. Livingston Co.*, 1989 WL 111845, at *3 (N.D. Ill. Sept. 21, 1989); *Mitchell v. Am. Hardware Mfrs. Ass'n*, 1985 WL 2559, at *11 (N.D. Ill. Sept. 16, 1985); *Paris v. F. Korbel & Bros., Inc.*, 751 F. Supp. 834, 839-40 (N.D. Cal. 1990); *see also Ziaee v. Vest*, 916 F.2d 1204, 1210 (7th Cir. 1990) (court may, but need not, consider provable injury when deciding whether to impose penalty).

The facts of this case are comparable to those in which the plan administrator clearly failed to produce appropriate documentation, but did not act in bad faith and caused little or no actual harm to the plaintiff. James had at his disposal all the necessary information about Susan's plan, and makes no showing that he was harmed by RMC's failure to tender an ERISA-compliant SPD. At the same time, as Judge Aspen found, the COI and EBS provided by RMC fell short of its disclosure obligations in several significant respects. *See* 2010 WL 2681107, at *3-4. Moreover, RMC should have been aware of ERISA's requirements for SPDs.

Under the facts and circumstances of this case, the court finds that a penalty is appropriate, but that its magnitude should be modest, amounting to ten dollars per day. *See Jackson*, 937 F. Supp. at 742 (ten dollars per day); *Piggot*, 1989 WL 111845, at *3 (two dollars per day); *Mitchell*, 1985 WL 2559, at *11 ($1000 total); *Paris*, 751 F. Supp. at 839-40 (ten

dollars per day). The penalty runs from May 28, 2009 (the thirty-first day following James' April 28, 2008, request) until January 7, 2010, the end-date suggested by James. *See* Doc. 296-2 at 3. At ten dollars per day for 588 days, that amounts to a $5,880 statutory penalty that RMC must pay James.

## II. CHPIC's Request for Sanctions under Rule 11 and 28 U.S.C. § 1927

Earlier in this litigation, CHPIC and CHP filed two sanctions motions against James under Rule 11 and 28 U.S.C. § 1927. *See* Docs. 200, 203. The parties briefed the motions, and Judge Aspen denied them without prejudice, "with leave to refile at the end of the case." Doc. 261. Now that all substantive issues regarding CHPIC and CHP have been resolved, CHPIC (but not CHP) has moved for leave to re-file one of the sanctions motions. *See* Doc. 302. James moved the postpone consideration of the sanctions motion until the conclusion of any appeal or until the time for appeal expires (Doc. 305), but the court can resolve the sanctions motion now and elects to do so given the advanced age of this litigation.

Rule 11 provides that an attorney's signature on a filing certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2), (3). As the Seventh Circuit has noted, Rule 11 asks "whether the party or attorney made a reasonable inquiry into the facts, and whether the party or attorney made a reasonable inquiry into the law." *Ins. Benefit Adm'rs, Inc. v. Martin*, 871 F.2d 1354, 1358 (7th Cir. 1989).

Section 1927 of Title 28 permits a party to recover attorney fees from an opposing counsel who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Analysis under § 1927 turns on whether the attorney's conduct was objectively unreasonable and vexatious: "If the lawyer pursues the path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). Sanctions are appropriate when the attorney "has acted in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice." *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir. 1988) (internal quotation marks omitted).

The parties debate whether CHPIC's sanctions motion complied the "safe harbor" provision of Rule 11(c)(2), which requires a party seeking Rule 11 sanctions to serve the motion on the other party motion 21 days before filing the motion. *See Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025-27 (7th Cir. 1999). There is no need to address whether CHPIC's re-filing of the motion cured CHPIC's initial failure to comply with Rule 11(c)(2)—CHPIC initially filed the motion less than 21 days after serving the motion on James—or whether Rule 11(c)(2) applies to motions filed under § 1927, because CHPIC's motion fails on the merits.

First, CHPIC argues that James named CHP as a defendant despite having information clearly demonstrating that the Royal Plan, and not CHP, was the plan at issue and therefore the proper defendant. Judge Aspen agreed that CHP was not a proper defendant. *See* Doc. 232. However, CHP did not seek leave to re-file its sanctions motion, only CHPIC did, and CHPIC does not explain why it should be permitted to seek sanctions for alleged litigation misconduct

directed towards CHP.  In any event, as Judge Aspen noted, James sued CHP due to his belief that CHP was CHPIC's trade name.  Given the confusion that occasionally arises in ERISA litigation regarding which entity is the appropriate defendant, *see Kasireddy*, 2010 WL 4168512, at *1 n.1, the court will not sanction James or his lawyer for taking (ultimately mistaken) measures to ensure that they did not fail to sue the correct Concert entity.

Second, CHPIC contends that James falsely testified at his deposition that he never received from RMC or CHPIC anything other than a "one-page deal" as a "certificate of insurance."  CHPIC maintains that this testimony is contradicted by James' production in discovery of a 51-page COI.  Even assuming that false deposition testimony could support sanctions under Rule 11, *see Moore v. Vital Prods., Inc.*, 2009 WL 275475, at *16 (N.D. Ill. Feb. 3, 2009) ("deposition testimony that plaintiff did not 'present to the court'" is not subject to Rule 11 sanctions) (quoting Fed. R. Civ. P. 11(b)), sanctions would be inappropriate here because a fair reading of James' deposition testimony suggests some confusion on his part regarding which document was being referred to as the "certificate of insurance."  James' confusion is excusable given the stress he no doubt experienced when being deposed about his wife's attempts to seek medical treatment to cure a disease that ultimately caused her death.  Finally, because none of James' claims relied on non-disclosure of the COI, the only potential harm arising from his testimony was the time spent during the deposition attempting to sort through which document was being discussed.  Sanctions are not appropriate under these circumstances.  *See Milwaukee Concrete Studios, Ltd. v. Field Mfg. Co.*, 8 F.3d 441, 451 (7th Cir. 1993) ("Rule 11 is not directed to isolated factual errors that do not undermine a party's legal theory.  Instead, Rule 11 is meant to deter baseless filings in district court.") (internal quotation marks omitted).

Third, CHPIC points to an apparent discrepancy between James' complaint and his deposition testimony regarding whether he and Susan consulted CHPIC prior to Susan going to Rush. This discrepancy, CHPIC argues, demonstrates that James' complaint predicated his wrongful denial of benefits claim on a factual allegation that he later admitted was false. This serious charge does not withstand scrutiny.

Paragraph 25 of the Second Amended Complaint alleges, in pertinent part:

> Killian called Concert Health Plan Insurance Company to confirm that Rush University was a network provider under the Concert Health Plan (or Royal Management Corp. Health Insurance Plan). Concert Health Plan Insurance Company informed Killian that Rush University was within the Concert Health Plan network *or* failed to inform Killian that Rush University was not in the Concert Health Plan network.

(Emphasis added). The second sentence is stated in the disjunctive—alleging *either* that CHPIC told James that Rush was in-network *or* that CHPIC failed to inform James that Rush was not in-network. The sentence would be false, and thus potentially sanctionable, only if both alternative allegations are knowingly false. The first alternative allegation does not have evidentiary support. Defense counsel repeatedly questioned James about whether he or his wife asked CHPIC whether Rush and Dr. Bonami (the physician Susan saw at Rush were within the network, and James said no and made clear that they would have sought treatment from Dr. Bonami regardless of whether he or Rush was in-network.

However, there is evidentiary support for the second alternative allegation. James testified that told a CHPIC representative that he and Susan were going to seek a second opinion and the representative encouraged them to do so. *See* Doc. 203, Exh. D at 53-54. James testified that he called CHPIC the day of the appointment, that the doctor recommended that Susan have surgery promptly, and that James, believing that Susan needed to be preauthorized, called to inform CHPIC that she was being admitted. *See id*. at 72-74. During that call, James referred to

-8-

the Rush as "St. Luke's"—Rush University Hospital until recently was called Rush-Presbyterian St. Luke's—causing some confusion with the CHPIC representative as to whether "St. Luke's" was the same hospital as Rush. This led the CHPIC representative to ask James to call back later, which he did. *See id*. at 72. During the second call, James informed the CHPIC representative that Susan was going to be admitted, and was told "Okay." *See id*. at 73. James testified that during the two calls, "No one told me anything as far as what was covered or what was not covered." *See id*. at 74.

Reasonably construed, the entirety of James' deposition testimony is consistent with the proposition that CHPIC "failed to inform Killian that Rush University was not in the Concert Health Plan network." Although James' strategy of using a disjunctive allegation in the second sentence of Paragraph 25 of the Second Amended Complaint is not entirely praiseworthy, the paragraph as drafted finds support in the record and thus is neither false nor worthy of sanctions under either Rule 11 or § 1927.

## III. Attorney Fees under ERISA

In addition to moving to re-file its sanctions motion, CHPIC's moved for attorney fees and costs under a fee-shifting provision in ERISA. *See* Doc. 299. Section 1132(g)(1) of Title 29 provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). There is no doubt that CHPIC was a prevailing party, having been awarded summary judgment. The question here is whether an award of statutory attorney fees are appropriate.

The Seventh Circuit has approved two tests for evaluating whether fees should be granted in an ERISA action. The first test turns on five factors:

> 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of

attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions.

*Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). The second test turns on whether the losing party's position was "substantially justified." *Ibid*. (quoting *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984)). The second test creates "a modest presumption" in favor of fees and looks to whether "the loser's position, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious." *Bittner*, 728 F.2d at 830. "[B]oth tests essentially ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Quinn*, 161 F.3d at 478 (internal quotation marks omitted).

Although James lost on the merits, his positions were substantially justified and not taken for the purpose of harassment. Judge Aspen identified several ERISA violations in the benefit denial letters James received. *See* 2010 WL 2681107, at *7-9. His claim, therefore, had some grounding in the law, even if it ultimately was insufficient to warrant relief because "[d]espite these technical deficiencies, the notifications plainly informed Killian of the specific reasons for CHPIC's decision," and because that "CHPIC's letters substantially comply with ERISA's notification requirements." *Id*. at *9. Moreover, although James' claim for the wrongful denial of benefits did not prevail, it was not brought in bad faith or to harass; rather, Killian simply failed to show that the denial was arbitrary or capricious. *See id*. at *5-10. Accordingly, the court declines to require James to pay CHPIC any fees or costs under § 1132(g)(1).

## Conclusion

For the foregoing reasons, RMC must pay James a statutory penalty of $5,880. CHPIC's motion to refile its sanctions motion is granted, and the motion for sanctions is denied, as is CHPIC's motion for attorney fees and costs under ERISA. Killian's motion to reset is denied. With that, this case is concluded.

December 17, 2010

_____
United States District Judge